# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

№ 05-CV-0985 (JFB) (SMG)

---

SALVATORE PENNACCHIO, INDIVIDUALLY AND ON BEHALF OF
OLD WORLD BREWING COMPANY, INC., DERIVATIVELY; AND ON BEHALF OF
YANKEE BREWING COMPANY, LLC, DERIVATIVELY,

Plaintiff,

VERSUS

ROBERT S. POWERS, STEPHEN C. DEMARIA,
STEVEN A. SEGAL, STEPHEN PERILLO,
MULTIMEDIA DISTRIBUTION, LLC,
AND CERTAIN AS YET UNNAMED DEFENDANTS A-J,

Defendants.

---

MEMORANDUM AND ORDER
February 5, 2007

---

JOSEPH F. BIANCO, District Judge:

Plaintiff Salvatore Pennacchio ("Pennaccio") brings this action, individually and derivatively on behalf of Old World Brewing Company, Inc. (hereinafter, "Old World Brewing") and Yankee Brewing Company, LLC (hereinafter, "Yankee Brewing") against defendants Robert Powers, Stepehen Demaria, Steven Segal, Stephen Perillo, and Multimedia Distributing, LLC, alleging trademark infringement and other claims under the Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.*, as well as pendent state law claims for unfair competition, misappropriation, and breach of fiduciary duty. Defendants Steven Segal, Multimedia Distributing, LLC, Stephen C. DeMaria and Stephen Perillo[1] (collectively, "the moving defendants") now move (1) to dismiss the complaint for lack of federal subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and (2) to dismiss the

---

[1] The motion was briefed and filed by defendants Steven Segal and Multimedia Distributing, LLC. However, by letter dated February 1, 2007, counsel for defendants Stephen C. DeMaria and Stephen Perillo joined the motion.

fourth cause of action for improperly asserting a derivative claim on behalf of Yankee Brewing, which is a limited liability company, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, defendants' motion to dismiss for lack of subject matter jurisdiction is denied and the motion to dismiss the derivative claim asserted on behalf of Yankee Brewing is granted.

I. BACKGROUND

A. Facts

The following facts are taken from the complaint and are not findings of fact by the Court, but rather are assumed to be true for purposes of deciding this motion to dismiss.

Pennacchio is the creator and developer of the beer lines and trademarks related to New York Harbor Ale. (Complaint, ¶ 11.) Pennacchio is also the founder and principal shareholder of Old World Brewing, for which he filed a trademark registration for New York Harbor Ale. (*Id.* ¶ 12.) From approximately 1987 until 2002, Pennacchio invested hundreds of thousands of dollars and significant amounts of labor into the development of the trademark for New York Harbor Ale. (*Id.* ¶ 23.)

In October 2004, Pennacchio allegedly discovered that defendants Powers and DeMaria fraudulently transferred the New York Harbor Ale trademark from Old World Brewing to Powers for $10. (*Id.* ¶¶ 13-16.) The complaint further alleges that all of the defendants misappropriated the New York Harbor Ale trademark and benefitted through, among other things, (1) the improper sale of beer and the ability to obtain leverage with which to expand to other businesses (*Id.* ¶¶ 19-20), and (2) producing illegal, improper and inferior beer and beer-related products, including illegally manufacturing beer out of state (*Id.* ¶ 24).

With respect to Yankee Brewing, the complaint alleges that all of the defendants misappropriated money and physical assets from Yankee Brewing. (*Id.* ¶ 27.) It is further alleged that the defendants "improperly and illegally took on credit, creditor, loans and debts" that wrongly hold both Pennacchio and Yankee Brewing liable. (*Id.* ¶ 29.)

Defendant Powers also was allegedly hired by Pennacchio and DeMaria to provide legal, managerial, and financial services for Old World Brewing and Yankee Brewing, and subsequently served as financial manager and attorney for Yankee Brewing. (*Id.* ¶ 33.) According to the amended complaint, Powers breached his fiduciary duty to Pennacchio and Yankee Brewing by, among other things, (1) acting in conflict of interest to the company, (2) misappropriating company assets and assisting others in doing so, (3) deliberately misinforming and misleading Pennacchio and giving him erroneous legal advice about the law, the status of the company and company documents, and (4) drafting, creating and completing documents that contained false information regarding the company and its ownership. (*Id.* ¶ 34.)

B. Procedural History

Plaintiff initiated this action by filing a complaint on February 22, 2005. On February 21, 2006, this case was re-assigned to this Court. Thereafter, the moving defendants filed a motion to dismiss the complaint on May 4, 2006. Oral argument was held on February 2, 2007.

## II. STANDARD OF REVIEW

A motion to dismiss for want of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is reviewed under the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Coveal v. Consumer Home Mortg., Inc.*, No. 04-CV-4755 (ILG), 2005 U.S. Dist. LEXIS 25346, at *6 (E.D.N.Y. Oct. 21, 2005) (citing *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003), cert. denied, 540 U.S. 1012 (2003)). In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). Dismissal is warranted only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Weixel*, 287 F.3d at 145 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The appropriate inquiry is "not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Twombly v. Bell Atlantic Corp.,* 425 F.3d 99, 106 (2d Cir. 2005).

"A court presented with a motion to dismiss under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6) must decide the 'jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction.'" *Coveal*, 2005 U.S. Dist. LEXIS 25346, at *7 (quoting *Magee v. Nassau County Med. Ctr.*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)); *see also Rhulen Agency, Inc. v. Alabama Ins. Guaranty Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (noting that a motion to dismiss for failure to state a claim may be decided only after finding subject matter jurisdiction).

## III. DISCUSSION

### A. Subject Matter Jurisdiction

Section 1338(a) of Title 28, United States Code, provides in relevant part, that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights, and trademarks." 28 U.S.C. § 1338(a). In addition, the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.* ("Lanham Act"), at 15 U.S.C. 1121(a), provides that the District Court shall have jurisdiction "[o]f all actions arising under this chapter."

Defendants have raised the threshold jurisdictional question as to whether the complaint in the instant case "arises" under the applicable statutes. Specifically, defendants argue that the threshold issue in this case is who owns the mark, which is not a matter arising under the laws of the United States, and any contingent Lanham Act claims must await the determination of the mark's ownership in state court. As discussed below, the Court finds that argument to be without merit.

In *T.B. Harms v. Eliscu*, 339 F.2d 823 (2d Cir. 1964), the Second Circuit established that a suit "arises under" the Copyright Act for purposes of jurisdiction under 28 U.S.C. § 1338 if (1) "the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement . . . or" (2) "the complaint . . . asserts a claim requiring construction of the Act . . . ." *Id.* at 828. The plaintiff in *T.B. Harms* sought a declaratory judgment that he

3

was the sole owner of renewal copyrights. Specifically, the dispute concerned whether one of the defendants had previously assigned a copyright interest to plaintiff's agent. The suit did not involve any claim of infringement and plaintiff did not seek any relief under the Copyright Act. Under those circumstances, the Second Circuit found that the suit did not "arise under" the copyright laws for purposes of Section 1338 and, thus, jurisdiction did not exist in federal court. *Id.* at 825-28.

The Second Circuit, in *Bassett v. Mashantucket*, 204 F.3d 343, 353 (2d Cir. 2000) reaffirmed that the *T.B. Harms* test is still the proper test for determining whether there is jurisdiction under Section 1338. In doing so, the Second Circuit explicitly rejected a new test that had been developed in another case, *Schoenberg v. Shapolsky Publishers, Inc.*, 971 F.2d 926, 932-33 (2d Cir. 1992), which focused on whether the claim for copyright remedies was merely incidental to a determination of ownership or contractual rights related to the copyright. In particular, the *Bassett* court noted:

> The *T.B. Harms* test differed significantly from the essence-of-the-dispute or merely incidental test [used in *Schoenberg*]. The analysis under *T.B. Harms* turns on what is alleged on the face of the complaint, while the essence-of-the-dispute or merely-incidental test looks rather at what defense will be proffered.

*Id.* at 349. Reiterating that *T.B. Harms* was the proper test, the *Bassett* court held that "[w]hen a complaint alleges a claim or seeks a remedy provided by the Copyright Act, federal jurisdiction is properly invoked." *Id.* at 355. Applying that test to the facts, the Second Circuit concluded that, even though defendants argued that the copyright infringement claim regarding a film hinged on whether defendants had breached a Letter Agreement giving them the authority to develop and produce the film, the district court erred in finding no jurisdiction. *Id.* at 356. The Second Circuit held that "[b]ecause the complaint alleges the defendants violated the Copyright Act and seeks the injunctive remedy provided by the Act, under the rule of *T.B. Harms*, the action falls within the jurisdictional grant of Section 1338." *Id.*; *see also Daniel Wilson Prod., Inc. v. Time-Life Films, Inc.*, 736 F. Supp. 40, 43 (S.D.N.Y. 1990) ("Where a complaint alleges a federally conferred right, such as a copyright, a trademark, or a patent, then alleges violations of that right and requests remedies provided by federal statute, this should be enough to confer federal jurisdiction. The fact that such a claim arises in the context of a disruption of contractual arrangements and presents certain contract issues should not remove it from that jurisdiction.").

As both parties recognize, the *T.B. Harms* test, although developed in connection with copyright cases, applies with equal force to trademark claims. *See Ryan v. Volpone Stamp Co.*, 107 F. Supp. 2d 369, 375-77 (S.D.N.Y. 2000) (applying *T.B. Harms* test for trademark claims and finding subject matter jurisdiction); *TGI Friday's Inc. v. Nat'l Rest. Mgmt., Inc.*, No. 91-CV-5412 (KMW), 1992 WL 164445, at *2 (S.D.N.Y. June 24, 1992) (same); *Foxrun Workshop, Ltd. v. Klone Mfg, Inc.*, 686 F. Supp. 86, 88-89 (S.D.N.Y. 1988) (same). Therefore, the Court must analyze plaintiff's trademark claims within the *T.B. Harms* framework.

In the instant case, defendants seek to have this Court look beyond plaintiff's complaint and conclude that the trademark

claims are merely incidental to an underlying contractual dispute regarding ownership of the New York Harbor Ale mark. However, as discussed above, that is precisely the type of inquiry that the Second Circuit has instructed district courts not to conduct. Here, plaintiff's complaint alleges trademark infringement and seeks relief granted by the Lanham Act, including money damages and injunctive relief. No further inquiry should be conducted because plaintiff has satisfied both requirements of the *T.B. Harms* test.[2] Accordingly, defendants' motion to dismiss this action for lack of subject mater jurisdiction with respect to the trademark claims is denied.[3]

B.  Derivative Claims

The moving defendants argue that the fourth cause of action, which is brought derivatively on behalf of Yankee Brewing Company, must be dismissed because a derivative action cannot be brought under New York law on behalf of a limited liability company. As discussed below, the Court agrees.

It is well-settled that "'[w]here the substantive law of the forum state is uncertain

---

[2] At oral argument, counsel for defendants argued that this case is distinguishable from others where courts have found subject matter jurisdiction because plaintiff here concedes that there has been a transfer of the mark to defendants. The Court finds defendants' attempt to distinguish the applicable case precedent unavailing. The complaint clearly alleges that plaintiff is the rightful owner of the mark. In particular, the complaint alleges that Old World Brewing is the "rightful holder and owner of this trademark" (Complaint, ¶ 15) and that defendants fraudulently transferred the mark to New York Harbor Ale (*Id.* ¶ 13). Where valid ownership of the trademark is alleged by plaintiff and relief is sought under the Lanham Act based upon a fraudulent misappropriation of the mark, federal jurisdiction exists under *T.B. Harms* regardless of whether the resolution of that issue involves the validity of a purported assignment or license to defendants. *See*, *e.g.*, *Effects Associates, Inc. v. Cohen,* 817 F.2d 72, 73 (9th Cir. 1987) (citing *T.B. Harms* and finding jurisdiction over copyright infringement claim even though complaint, in claiming fraud, alleged an oral promise between parties that may amount to assignment or license for use of copyrighted works); *see also Greenfield v. Twin Vision Graphics, Inc.*, 268 F. Supp. 2d 358, 372 (D.N.J. 2003) (finding jurisdiction under Copyright Act where plaintiff asserted use of copyrighted photos outside scope of license).

[3] Defendants also argue that the trademark claims are not "ripe" for adjudication because any action for misappropriation and misuse must await the outcome of a determination of ownership of the mark by the state courts. That argument is similarly flawed because it is also premised on the assertion that federal courts must await the outcome of a contractual dispute in state court before deciding whether there has been trademark infringement. In other words, defendants are simply re-arguing, under the guise of ripeness, the issue of whether federal courts can decide the threshold question regarding ownership of the mark in the context of trademark litigation. As discussed in detail above, there is no reason that this Court cannot address both the trademark claims, as well as the issues of contract law that are intertwined with such trademark claims. Thus, the Court rejects any assertion by the defendants that the trademark claims must be dismissed as unripe. *See*, *e.g., Vestron v. Home Box Office Inc.*, 839 F.2d 1380, 1382 (9th Cir. 1988) ("[O]wnership will almost always be a threshold issue in a copyright infringement action. [Defendant's] intention to contest [plaintiff's] alleged ownership as part of its defense, regardless of any potential for success, does not affect jurisdiction.").

or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity.'" *Phansalkar v. Andersen Weinroth & Co.*, *L.P.,* 344 F.3d 184, 199 (2d Cir. 2003) (quoting *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994)). Moreover, "[i]n doing so, we must give 'fullest weight' to the decisions of a state's highest court, and we must give 'proper regard' to the decisions of a state's lower courts." *Phansalkar*, 344 F.3d at 119 (quoting *Travelers Ins. Co.*, 14 F.3d at 119). Among the resources available are "the statutory language, pertinent legislative history, the statutory scheme set in historical context, how the statute can be woven into the state law with the least distortion of the total fabric, state decisional law, federal cases which construe the state statute, scholarly works and any other reliable data tending to indicate how the New York Court of Appeals would resolve the [issue]." *Travelers Ins. Co.*, 14 F.3d at 119 (alteration in original) (quotation omitted).

Unlike the New York laws authorizing the creation of other business organizations, the New York LLC law does not expressly authorize derivative lawsuits. *See* New York Limited Liability Company Law §§ 101 *et seq*. ("NYLLCL"). Although the New York Court of Appeals has never addressed this issue, several lower courts in New York, including the Appellate Division, have repeatedly held that there is no right to bring a derivative action on behalf of a limited liability company. *See Hoffman v. Unterberg*, 780 N.Y.S.2d 617, 620 (N.Y. App. Div. 2004) ("[T]he plaintiff, an alleged owner/member of a limited liability company, does not have the right to bring a derivative action on behalf of the company."); *accord Tzolis v. Wolff*, 819 N.Y.S.2d 852 (table), 2006 WL 1310621, at *4 (N.Y. Sup. Ct. Mar. 20, 2006); *Lio v. Zhong*, 814 N.Y.S.2d 562 (table), 2006 WL 37044, at *3 (N.Y. Sup. Ct. Jan. 6, 2006); *Schindler v. Niche Media Holdings, LLC*, 772 N.Y.S.2d 781 (N.Y. Sup. Ct. 2003). Neither the parties nor this Court is aware of any New York state cases which have held otherwise. Given these lower court decisions finding no right to bring a derivative action, this Court concludes that these non-binding decisions should be given proper regard and that, in this particular circumstance, such decisions reflect the best indicator of how the New York Court of Appeals will decide this issue. *See McCarthy v. Olin Corp.*, 119 F.3d 148, 153 (2d Cir. 1997) ("'Where the high court has not spoken, the best indicators of how it would decide are often the decisions of lower [New York] courts.'") (alteration in original) (quoting *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 850 (2d Cir. 1992)).

As plaintiff points out, there have been federal court decisions both in this District and the Southern District of New York that have allowed derivative suits on behalf of New York LLCs to proceed under New York law, even in the absence of explicit statutory authority. *See, e.g., Weber v. King*, 110 F. Supp. 2d 124, 131 (E.D.N.Y. 2000); *see also Cabrini Dev. Council v. LCA-Vision, Inc.*, 197 F.R.D. 90 (S.D.N.Y. 2000), *vacated in part on other grounds sub nom., Excimer Assocs. v. LCA Vision, Inc.*, 292 F.3d 134, 139-40 (2d Cir. 2002). In *Weber*, the court noted that it was "peculiar" that the legislature did not provide for derivative actions for LLCs even though they are a hybrid of partnerships and corporations, both of which allow such actions. 110 F. Supp. 2d at 131. The court then concluded that the New York legislature's failure to include a derivative action in the Limited Liability Company Law does not prevent the court from recognizing

such a right at common law. *Id*. at 131-32.

As a threshold matter, both *Weber* and *Cabrini* were decided before a number of New York courts, including the Second Department, found that no right existed to bring a derivative action on behalf of a limited liability company. However, even in the wake of the New York lower court decisions, at least one court has continued to find that "the New York state court decisions do not provide a persuasive basis for concluding that LLC member derivative actions are prohibited." *Bischoff v. Boar's Head Provisions Co.,* 436 F. Supp. 2d 626, 633 (S.D.N.Y. 2006). This Court disagrees with that analysis.

It is axiomatic that, under New York law, "[t]he rules of statutory construction require the when the language of a statute is clear, the Court must give effect to the plain and ordinary meaning of the words used therein." *Green v. State of New York Dep't of Corr. Serv.*, 810 N.Y.S.2d 631, 633 (N.Y. Sup. Ct. 2006)*; see also* N.Y. STAT., § 94 ("The legislative intent is to be ascertained from the words and language used, and the statutory language is generally construed to its natural and most obvious sense, without resorting to an artificial or forced construction."); *People v. Munoz*, 615 N.Y.S.2d 730, 731 (N.Y. App. Div. 1994) ("It is an axiom of statutory construction that the legislative intent is to be ascertained from the language used, and that where the words of a statute are clear and unambiguous, they should be literally construed."). Here, the plain language of the statute does not provide for derivative actions.

The intent behind the statute's silence on that issue is buttressed by the fact that earlier versions of the NYLLCL contained a provision allowing derivative lawsuits (Article IX), but that provision was deleted by the legislature in the final law. Under New York law, "[i]t is well settled that legislative intent may be inferred from the omission of proposed substantive changes in the final legislative enactment." *In the Matter of the Grand Jury Subpoena Duces Tecum Served on the Museum of Modern Art*, 93 N.Y.2d 729, 738 (N.Y. 1999) (citing *Majewski v. Broadalbin-Perth Cent. School Dist*., 91 N.Y.2d 577, 587 (N.Y. 1998)); *see also People v. Korkala*, 472 N.Y.S.2d 310 (N.Y. App. Div. 1984) ("rejection of a specific statutory provision is a significant consideration when divining legislative intent"). Thus, New York courts have found the New York legislature's specific rejection of language authorizing derivative actions to be significant.[4] *See, e.g., Schindler*, 772 N.Y.S.2d at 785 ("The [LLCL] as originally drafted contained a provision (Article IX) allowing derivative lawsuits, but '[b]ecause

---

[4] This consideration and rejection by the legislature of specific language that would have authorized derivative suits distinguishes this situation from *Klebanow v. N.Y. Prod. Exch.*, 344 F.2d 294, 298 (2d Cir. 1965), where the Second Circuit, despite the absence of any language authorizing derivative suits under the limited partnership statute, found such a right existed under New York law. Here, it is not only the statute's silence, but the legislature's explicit rejection of such authorizing language that provides a clear understanding of the legislature's intent and is likely to be viewed as sufficient by the New York Court of Appeals to overcome any common law right to bring a derivative action here on the basis of the similarities between LLCs and corporations or limited partnerships, which both have such a right. *See* N.Y. Statutes § 301(a) ("Generally, statutes in derogation of the common law receive a strict construction."); *id.* § 301(b) ("The common law is never abrogated by implication....").

7

some legislators raised questions as to the derivative rights provisions, to avoid jeopardizing passage of the Law, Article IX was excised . . . . The battle to include derivative rights in the LLCL may be fought at some future date.'") (alteration and omission in original) (quoting McKinney's, *Cons. Laws of New York Annotated*, Book 32A, Limited Liability Company Law, 2003 Pamphlet, Practice Commentary 1.F., p. 6); *see also Caprer v. Nussbaum*, 825 N.Y.S.2d 55, (N.Y. App. Div. Oct. 17, 2006) ("In the case of limited liability companies . . . a provision permitting derivative actions was deleted by the Legislature during its consideration of the statute."); *Lio v. Zhong*, 2006 WL 37044, at *3 (finding that there is no common law right to bring derivative action because, as other courts have held, "the deliberate omission of such a remedy in the statute means that there is no such right at all").

In short, the New York lower court decisions finding no derivative actions with respect to limited liability companies are fully supported by the plain language of the statute and the deliberate rejection by the legislature, in enacting the statute, of a provision that would have explicitly authorized such actions. *See Museum of Modern Art*, 93 N.Y.2d at 738 (omission of proposed change in final legislative enactment "coupled with the language of the statute, demonstrate[s] a clear mandate from the Legislature"). Under these circumstances, there is no reason for this Court to disregard these lower court state decisions, which appear to fairly reflect how the New York Court of Appeals would resolve this issue. In the instant case, a federal court is certainly not in a better position than these New York state courts to predict how the New York Court of Appeals would rule. Accordingly, consistent with these state decisions, this Court finds that there is no right to bring a derivative action on behalf of a limited liability company under New York law.

IV. CONCLUSION

For the reasons set forth above, defendants' motion to dismiss for lack of subject matter jurisdiction is DENIED and defendants' motion to dismiss plaintiff's fourth cause of action, the derivative claim asserted on behalf of Yankee Brewing, is GRANTED. The parties are directed to proceed with discovery pursuant to Magistrate Judge Steven M. Gold's individual rules, forthwith.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: February 5, 2007
Central Islip, New York

\* \* \*

The attorney for plaintiff is Eric Schneider, Esq., 41 Pearl Street, Kingston, New York 12402. The attorney for defendants is Steven A. Segal and Multimedia Distributing, LLC is Charles D. Abercrombie, Esq., Seiff Kretz & Abercrombie, 444 Madison Avenue, New York, New York 10022. The attorney for defendants Stephen C. DeMaria and Stephen Perillo is Richard Siegal, Esq., 244 Fifth Avenue, New York, New York 10001.